PETITIONERS APPEARING PRO SE:
**CHRIS M. & PAULA J. BOLTE**
Ferdinand, IN

ATTORNEYS FOR RESPONDENT:
**MARILYN S. MEIGHEN**
Carmel, IN
**BRIAN A. CUSIMANO**
Indianapolis, IN


FILED
Aug 03 2026, 2:59 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | | |
|---|---|---|
| CHRIS M. & PAULA J. BOLTE, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Case No. 25T-TA-00026 |
| | ) | |
| DUBOIS COUNTY ASSESSOR, | ) | |
| | ) | |
| Respondent. | ) | |

## ON APPEAL FROM A FINAL DETERMINATION OF
## THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**August 3, 2026**

MCADAM, J.

Chris and Paula Bolte, appearing pro se, appeal the Indiana Board of Tax Review's final determination that increased the 2023 and 2024 assessments of their home. The Boltes raise numerous claims challenging the Indiana Board's final determination. They contend that the Board's final determination is contrary to law, an abuse of discretion, arbitrary and capricious, and a violation of their constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. After reviewing the record, the Court is not persuaded that the Board's decision was erroneous.

**FACTS AND PROCEDURAL HISTORY**

The Boltes own a home in Ferdinand, Indiana, that was assessed at $191,900 for 2023 and $193,900 for 2024. Believing those assessments to be too high, the Boltes challenged both. The Dubois County Property Tax Assessment Board of Appeals held a hearing on the Boltes' 2023 appeal, ordering no change in the assessment, and took no action on their 2024 appeal. The Boltes then appealed both assessments to the Indiana Board of Tax Review.

Upon notice of the Boltes' appeal, the Dubois County Assessor hired an appraiser and asked the Boltes to allow him to enter and inspect their property to prepare an appraisal report. The Boltes notified the Assessor that they had "stipulations" before they would consent to an appraiser entering their property. (Certified Admin. R. at 32 ¶ 2.) The parties were unable to reach an agreement, so within a week, the Assessor filed a motion with the Board, requesting an order permitting their appraiser to inspect the Boltes' property. (*See* Certified Admin. R. at 29–30.) The Boltes (through counsel) opposed that request, arguing that the Assessor had not made "reasonable efforts" to resolve the dispute before involving the Board, because the parties "ha[d] not yet discussed the Boltes['] stipulations." (Certified Admin. R. at 34 ¶ 12.)

After the parties conferred with the assigned administrative law judge ("ALJ"), the Boltes identified eighteen conditions they required the Assessor to agree to before they would allow an appraiser onto their property.[1] The Assessor responded to the

---

[1] Their conditions included waivers of liability (releasing them from all liability for injury to the appraiser, even from their own negligence); demands for medical information from the appraiser (10 years of medical records, proof of five COVID-19 vaccinations, and two negative COVID-19 tests in the week before the appraisal); requirements for the appraiser during the appraisal (that he wear a mask and gloves, not touch anything, not speak to the Boltes, and remain 6 feet from them at all times); demands to address their security concerns (that the appraiser provide a

Boltes' demands, rejecting some and offering compromises to others. (Certified Admin. R. at 48–50.) After three months without reply from the Boltes, the Assessor requested that the Board issue an order either (1) allowing the appraiser's entry onto the Boltes' property, or (2) allowing the appraiser to conduct an exterior-only inspection and prohibiting the Boltes from "offering any evidence . . . to contradict" his data and assumptions about their property. (Certified Admin. R. at 53–56.)

Soon after, the Board ordered the Boltes to allow the appraiser to enter and inspect the whole of their property within thirty days. (Certified Admin. R. at 58–59.) The Boltes continued to insist on twelve conditions before granting entry, arguing that the order did not prevent them from doing so. (Certified Admin. R. at 67–68, 70, 255 ¶ 9.) The Assessor moved to sanction the Boltes for noncompliance with the order, proposing that the appraiser be allowed to perform an exterior-only inspection of the property from public streets, and that the Boltes be prevented from introducing evidence to contradict the appraiser's data and conclusions. (Certified Admin. R. at 65 ¶ 15.) Although the Board did not rule on the request for sanctions at that time, the Boltes agreed to the conditions of the proposed sanction, (Certified Admin. R. at 71 ¶¶ 4–5, 255 ¶ 9,) and the appraiser appraised the Boltes' property without entry, (Certified Admin. R. at 255 ¶ 11.)

Two months later, the Board held a hearing on the Boltes' appeals, at which both the Assessor and the Boltes (having dispensed with counsel) offered evidence and testimony. Because the assessment for the Boltes' property increased by more than five percent over the previous year, the Parties agreed that the burden of showing the

background check and not possess any weapons, and that the Assessor pay for a security representative of the Boltes' choice to be present and pat down the appraiser); and others (a $1,000 fee from the Assessor for each hour of the appraisal and that the Boltes' receive a free copy of the appraisal report). (Certified Admin. R. at 190–91.)

3

property's true tax value shifted to the Assessor. *See* IND. CODE § 6-1.1-15-20(b) (2025). To carry her burden, the Assessor offered an appraisal with supporting testimony from the appraiser, as well as property record cards for the 2023 and 2024 tax years for the Boltes' property. The Boltes objected to the appraiser's report and testimony, arguing that the Assessor had not disclosed a witness list identifying the appraiser before the hearing. (Certified Admin. R. at 325:11.) The Boltes offered forty-five exhibits, including property record cards for over thirty properties, their notice of appeal and petition for review, the Assessor's comparable sales reports, and a 2020 appraisal of their property.

The Board determined that the appraisal offered by the Assessor was probative of the true tax value of the Boltes' property. (Certified Admin. R. at 268 ¶ 54.) The Board also found that the Boltes' evidence was not sound in its methodology and lacked the necessary adjustments to be reliable. (Certified Admin. R. at 268–69 ¶¶ 55–58.) Thus, the Board adopted the Assessor's values of $225,000 for 2023 and $232,000 for 2024, and rejected the Boltes' proposed valuation. (*See* Certified Admin. R. at 273 ¶ 69.)

The Boltes now appeal the Board's final determination.

## STANDARD OF REVIEW

This Court's review of Indiana Board decisions is governed by Indiana Code § 33-26-6-6, which closely mirrors the language governing judicial review of administrative decisions from Indiana's Administrative Orders and Procedures Act. *Compare* IND. CODE § 33-26-6-6(e) (2026), *with* IND. CODE § 4-21.5-5-14(d) (2026). Under Indiana Code § 33-26-6-6, the party seeking to overturn a final determination of the Board bears the burden of demonstrating its invalidity. IND. CODE § 33-26-6-6(b). Challengers must demonstrate that they have been prejudiced by a final determination

4

of the Board that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. IND. CODE § 33-26-6-6(e). The Board's legal conclusions are reviewed de novo and its factual determinations are afforded deference when they are supported by substantial and reliable evidence. *Majestic Props., LLC v. Tippecanoe Cnty. Assessor*, 241 N.E.3d 642, 644 (Ind. Tax Ct. 2024).

**DISCUSSION**

The Boltes ask the Court to reverse the Board's final determination and direct the Board to adopt the Boltes' proposed values for their property for 2023 and 2024. The Boltes advance several arguments regarding errors made by the Board. Many of these arguments overlap or are not clearly delineated, so the Court has organized their claims into the following seven categories for clarity and to ensure thorough analysis. The Boltes contend that:

1. The Board acted contrary to law and should not have admitted the testimony and report of the Assessor's appraiser.

2. The Board acted in an arbitrary and capricious manner by not allowing them to introduce at their hearing certain evidence they believe bears on the Board's finding that the Assessor acted in good faith.

3. The Board's warrantless entry order violated their Fourth Amendment rights.

4. The administrative record is incomplete.

5. The Board abused its discretion by declining to adopt their adjusted appraisal value.

6. The Board abused its discretion in accepting the Assessor's appraisal of the "value" of their property.

7. The Board's decision was contrary to law because it did not separate the land and improvement values of their property in its final determination.

Despite their numerous claims, the Boltes' request to reverse the Board's final determination must be denied. Each of the Boltes' arguments fail as they do not demonstrate that the law or evidence in the record compelled a different result. As such, the Court affirms the Board's determination.

**1. The Boltes have not shown that the Board should have excluded the appraiser's testimony and report.**

The Boltes first challenge the Board's decision to allow the Assessor's introduction and use of the appraiser's expert testimony and appraisal report. At the evidentiary hearing before the Board, the Boltes objected to the Assessor's expert witness on the grounds that the Assessor failed to deliver a witness list prior to the hearing as required by the Board's procedural rules. The Assessor does not dispute this, but contends the failure was inadvertent, noting that counsel attempted to send the list by email but sent it to the wrong address. The Boltes maintain that this failure was intentional and in bad faith. On appeal, the Boltes contend that the Board's decision to admit the evidence over their objections was arbitrary, capricious, and contrary to law. The Court disagrees.

6

"To promote settlement and prevent unfair surprise," 52 Indiana Administrative Code Section 4-8-1 provides that parties to an appeal before the Board "shall exchange evidence as provided in this section." 52 IND. ADMIN. CODE 4-8-1(a) (2025). Specifically, "[a] party to the appeal must provide to all other parties . . . [a] list of witnesses and exhibits to be introduced at the hearing at least fifteen (15) business days before the hearing." 52 4-8-1(b)(2). A party must provide those materials through "personal, hand delivery or deposit the materials in the United States mail or with a private carrier." 52 IND. ADMIN. CODE 4-8-1(c).[2]  Under the regulation, failure to disclose the witness list in advance "may serve as grounds to exclude the evidence or testimony at issue." 52 IND. ADMIN. CODE 4-8-1(f).

Contrary to the Boltes' argument, this section does not require the exclusion of witnesses in the case of noncompliance with the rule. Instead, it grants the Board discretion to determine whether exclusion is the appropriate remedy, noting that a violation "*may* serve as grounds" for exclusion. 52 IND. ADMIN. CODE 4-8-1(f) (emphasis added). The Boltes rely heavily on this section's use of "must" and "shall" to argue that it required the exclusion of the appraiser's testimony and appraisal report. They contend that the language of this section requires the automatic exclusion of undisclosed witnesses' testimony and any evidence it may authenticate. But courts are bound to interpret regulations, like statutes, according to their plain and ordinary meaning. *Nat. Res. Def. Council v. Poet Biorefining-North Manchester, LLC*, 15 N.E.3d 555, 564 (Ind.

---

[2] This section of the administrative code was amended on August 4, 2025—after the Boltes' exchange of evidence and hearing, but before the Board issued its final determination. Ind. Reg. LSA Doc. No. 25-128 (August 4, 2025) (*see* https://iar.iga.in.gov/register/20250903-IR-052250158FRA). The Board applies only the pre-amendment version, *compare* (Certified Admin. R. at 260 ¶ 25) *with* Ind. Reg. LSA Doc. No. 25-128, so the Court will confine its analysis to that version.

2014). The Boltes' construction ignores the plain meaning of this section's text, which reserves the decision to exclude evidence to the Board's discretion.[3]

As the plain meaning of this section grants discretion to the Board, the Court's review is limited to whether it abused that discretion or acted arbitrarily and capriciously. An abuse of discretion requires a showing that "the Indiana Board acted either against the logic and effect of the facts and circumstances before it or in contravention of the law." *DuSablon v. Kaufman*, 160 N.E.3d 587, 591 (Ind. Tax Ct. 2020). And a decision is arbitrary and capricious when "it is without some basis which would lead a reasonable person to the same conclusion." *Peters v. Garoffolo*, 32 N.E.3d 847, 850 (Ind. Tax Ct. 2015) (quoting *Dawkins v. State Bd. of Tax Comm'rs*, 659 N.E.2d 706, 709 (Ind. Tax Ct. 1995)).

Applying these principles to the Board's decision in this case, the Court is not persuaded that the Board's decision was an abuse of discretion or arbitrary and capricious. The Board found that the Assessor acted in good faith, that the Boltes were not prejudiced by the lack of disclosure, and that, "[g]iven the extensive pre-hearing litigation over whether [the appraiser] would be allowed to inspect their property, the Boltes could not have been surprised that the Assessor intended to call him as a witness to authenticate his appraisal report and testify about its contents." (Certified Admin. R. at 261 ¶ 27; *see* Certified Admin. R. at 260–61 ¶¶ 26–28.) Those facts provide a basis upon which a reasonable person could reach the same decision. As the Board's final determination points out, if the Boltes "felt they were subjected to unfair surprise . . . they could have sought a continuance," for instance, to prepare a cross-

---

[3] The result here might be different if the regulation instead provided that a violation "*shall* require the exclusion of the evidence or testimony at issue."

8

examination of the appraiser. (Certified Admin. R. at 261 ¶ 28.) And while a failure to seek a continuance would not excuse noncompliance on the Assessor's part, the Boltes already knew that the Assessor intended to introduce the appraiser's report—they concede it was properly sent to them in the exchange of documentary evidence. (Pet'r's Br. at 18.) The Boltes have not raised any questions about the appraiser's qualifications or credibility, issues more likely to require advance preparation. Thus, any relevant questions they would have asked the appraiser on cross-examination likely would have been about his analysis and conclusions in the report.

It is well settled that error in the admission or exclusion of evidence will not result in reversal on appeal "unless refusal to take such action appears to the court inconsistent with substantial justice." Ind. Trial Rule 61*; see also Madison Cnty. Assessor v. Kohl's Ind., LP*, 272 N.E.3d 592, 602 (Ind. Tax Ct. 2025) (citing *Ciceu v. Knox Cnty. Assessor*, 232 N.E.3d 662, 667 (Ind. Tax Ct. 2024)) ("An error is generally considered harmless when it would not affect the outcome of the case."). In the absence of a request to continue the hearing to a later time—a request the Boltes did not make— the only alternative would have been for the Board to exclude the evidence altogether. As the Board rightly noted, given the lack of prejudice to the Boltes, such a sanction would be a disproportionate and "drastic remedy." (Certified Admin. R. at 261 ¶ 28*;) see In re A.S.G.*, No. 02A03-1304-JC-158, 2013 WL 5379648, at *3 (Ind. Ct. App. Sep. 24, 2013) (quoting *Berry v. State*, 715 N.E.2d 864, 866 (Ind. 1999)) ("[I]n the context of discovery violations, a continuance is the usual remedy; '[e] of the evidence is an

extreme remedy and is to be used only if the [opposing party]'s actions were deliberate and the conduct prevented a fair trial.'").[4]

### 2. The Boltes have not shown that additional evidence would have changed the Board's decision.

Related to the failure of Assessor's counsel to disclose a witness list in advance, the Boltes also claim that the Board acted in an arbitrary and capricious manner at their hearing by not allowing them to introduce evidence bearing on whether the Assessor's counsel acted with good faith when she emailed the witness list to the wrong address. The Boltes state they would have offered two categories of evidence: first, an exhibit indicating "that Assessor's counsel previously utilized the wrong email address" and received a bounce back;[5] and second, exhibits indicating "that when utilizing the address utilized by Assessor's counsel a bounce back occurs." (Pet'r's Br. at 14.) The Boltes claim that if this evidence had been admitted, it would have shown the Assessor acted in bad faith and changed the Board's determination. The Court disagrees.[6]

Regarding the first category of evidence offered by the Boltes—a prior email between the parties indicating that the Assessor's counsel had received a bounce back when she sent a message intended for the Boltes to the wrong email address—this evidence does not suggest the mistake was intentional. While such evidence might tend

---

[4] The Boltes also claim that the Board's admission of this evidence and testimony violated their due process rights and denied them a "fair and free hearing." (Pet'r's Br. at 10, 37.) But they do not develop any argument to support this claim. This Court will not develop that argument for them or consider it further. *Ciceu v. Knox Cnty. Assessor*, 272 N.E.3d 583, 589 n.4 (Ind. Tax Ct. 2025).

[5] The parties use the term "bounce back" to mean an email that is returned to sender as undeliverable, often with an error message. The Court adopts that term throughout.

[6] The Boltes also raise a due process claim regarding this denial of additional evidence, (Pet'r's Br. at 12, 17,) but they do not develop any argument to support it. This Court will not develop that argument for them or consider it further. Ciceu, 272 N.E.3d at 589 n.4.

to make it more likely that the Assessor's counsel received a bounce back email the second time she sent an email to a wrong address, it does not compel such a conclusion. A technical issue may have caused a bounce back not to be sent, or it could be that, even if the Assessor's counsel did receive a bounce back email, she was not aware of it (because, for example, it was routed automatically to her junk email). The Boltes point to no evidence indicating that the Assessor's counsel intentionally sent the witness list to the wrong address, and it is difficult to conceive of a reason why she would send it at all if she did not want the Boltes to have it. In any event, the Boltes have not pointed to any authority requiring the Board to allow them to submit evidence on the issue, and it is clear to the Court that, given the circumstances, the Board exercised its discretion reasonably.

As to the second category of evidence—examples of various bounce back emails the Boltes received when they sent messages to the same incorrect email address as the Assessor—none of this evidence was available at the time of the Board's hearing. Indeed, the Boltes' brief describes it as a series of emails they generated months after the hearing, which is confirmed by the dates listed on the copies of the emails themselves offered as exhibits by the Boltes in this appeal. (Pet'r's Br. at 15–16¶¶ 28–32; *see* Pet'r's Br. Exs. 1–5, at 1–5.) The hearing took place on May 13, 2025, and the emails appear to have been generated in September of the same year. As such, there can be no error on this basis as the evidence did not exist at the time of the hearing.[7]

---

[7] The Boltes ask this Court to admit that evidence now on appeal. That request must be denied because they have not demonstrated that the evidence satisfies the statutory requirements to receive evidence on appeal from outside the administrative record. "Generally, '[w]hen a litigant fails to present evidence to the Board, the Court may not consider that evidence on appeal,' unless exceptions referenced in Indiana Code Section 33-26-6-5 apply." *Webb v. Sullivan Cnty. Assessor*, No. 25T-TA-00029, 2026 WL 2097225, at *1 (Ind. Tax Ct. July 16, 2026) (alteration in

### 3. The Court need not reach the Boltes' Fourth Amendment claim because no entry of their property occurred.

Next, the Boltes challenge the constitutionality of the Board's order directing them to allow the Assessor to enter and inspect their property. They contend that administrative searches, like the proposed entry here, are unreasonable without a warrant and violate the Fourth Amendment of the United States Constitution. However, the Court need not reach the question of whether the Board's entry order violated the Boltes' Fourth Amendment rights, as no entry onto their property ever occurred.

Despite the Board's order directing them to permit the Assessor's appraiser to inspect their property, the Boltes refused to allow entry by the Assessor or the appraiser. (Certified Admin. R. at 255 ¶ 9.) As a result, neither the Assessor nor the Assessor's appraiser ever entered the Boltes' property. (Certified Admin. R. at 255 ¶ 11, 259 ¶ 20.) Instead, the Assessor sought to have the Board impose sanctions on the Boltes for their noncompliance with the entry order. The Board's ALJ appears to have granted the motion for sanctions at the hearing, indicating "that he would give the Assessor a 'pretty broad leash' to object to evidence that was not readily apparent to [the appraiser] from his curbside viewing of the property," (Certified Admin. R. at 258 ¶ 18,) a ruling the Board adopted after the hearing, (*See* Certified Admin. R. at 258 ¶ 19.) However, the ALJ's sanction was never enforced, because the Boltes did not make any objections, offer any evidence countering the Assessor's assumptions about the

---

original) (quoting *Prop. Dev. Co. Four, LLC v. Grant Cnty. Assessor*, 42 N.E.3d 182, 184 & n.1 (Ind. Tax Ct. 2015)). But the Boltes do not satisfy the exceptions; namely, they do not show that the evidence "relates to the validity of the determination at the time it was taken" or that it "is needed to decide disputed issues regarding" either the "[i]mproper constitution as a decision making body or grounds for disqualification of those taking the agency action" or the "[u]nlawfulness of procedure or decision making process." IND. CODE § 33-26-6-5(b) (2026).

property, or make an offer of proof pertaining to any evidence that the sanction might have prevented them from introducing. (Certified Admin. R. at 259 ¶ 21.)

While the Boltes raise an important question about the constitutional limits of the Board's authority to compel inspection of a taxpayer's property, any violation was merely speculative as no search was conducted. *See Bougie v. Chapman*, 244 N.E.3d 987, 995 (Ind. Tax Ct. 2024) ("[N]o [entry] of [the] property actually occurred . . . . So, [taxpayer's] Fourth Amendment rights were not infringed."). The Fourth Amendment requires an actual search, not just a potential one. *United States v. Karo*, 468 U.S. 705, 712 (1984) ("[W]e have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment."); *c.f. County of Sacramento v. Lewis*, 523 U.S. 833, 845 n.7 (1998) ("Attempted seizures of a person are beyond the scope of the Fourth Amendment."). The Boltes refused to permit an inspection, and no inspection occurred, so there is no constitutional violation.[8]

### 4. The Boltes have not shown how any alleged omission from the record rises above harmless error.

The Boltes next assert that the record is incomplete. Namely, they contend that it does not contain the following: (1) the swearing in of certain individuals on behalf of the Assessor; (2) testimony from Paula Bolte stating that the email address on the Boltes' petition for review was correct; and (3) a statement by the ALJ refusing further evidence about the unsent witness list. (Pet'r's Br. at 7–8 ¶ 16, 11–12 ¶¶ 20–21.) The Court does not find error.

---

[8] The Court leaves aside any questions about the constitutional implications of the sanction for noncompliance as the Boltes do not ground their Fourth Amendment challenge in that action. Moreover, at oral argument, the Boltes conceded that the sanction did not impede the presentation of their case nor dissuade them from putting forth any evidence they otherwise would have offered. (Tr. at 11:11–12:19.)

Even if the Boltes were to succeed in demonstrating that the statements were made and should have been included in the record, they have not shown that the alleged omissions would have affected the outcome of the case. As such, these claims must fail because the alleged omissions are nothing more than harmless error. *Kohl's Ind.*, 272 N.E.3d at 602 (citing *Ciceu v. Knox Cnty. Assessor*, 232 N.E.3d 662, 667 (Ind. Tax Ct. 2024)). As to the first alleged omission—the sworn oaths of two individuals— while the record clearly indicates that the unsworn individuals were present on behalf of the Assessor, (Certified Admin. R. at 5,) the record does not indicate that they testified or formally participated. Nor do the Boltes allege that any participation by either individual was material to their claims on appeal. (*See* Pet'r's Br. at 8 (alleging only that they "provid[ed] exhibits and help[ed] with the presentation").) As to the second alleged omission—Paula Bolte's alleged testimony about the correct email address for the Boltes—the record already contains Chris Bolte's statements specifying the Boltes' correct email address, so any related testimony by Paula Bolte would be duplicative. (Certified Admin. R. at 325:14–15.) Moreover, the Boltes have not alleged that Paula Bolte's testimony would be more probative than Chris Bolte's statements. Finally, as to the third alleged omission—the ALJ's refusal of further evidence—the transcript already contains statements by the ALJ taking the Boltes' objection under advisement and refusing further evidence. (Certified Admin. R. at 327:17–20.) The Boltes do not explain how the purportedly omitted statement changes or otherwise alters the meaning of the ALJ's other statements in the record.

**5.    The Board did not abuse its discretion in declining to adopt the Boltes' proposed valuations.**

The Boltes next contend that the Board erred by "accepting [the] appraisal [offered by the Assessor] in total and not adhering to the appraisal entered by the Petitioner." (Pet'r's Br. at 24.) The Boltes assert that their appraisal should have carried the day because it was "conducted in the exact same manner" as the Assessor's appraisal and was adjusted sufficiently to demonstrate the value of their property. (Pet'r's Br. at 24; *see also* Pet'r's Br. at 25) The Court understands the Boltes' ultimate contention to be that the Board abused its discretion when it decided not to base its final valuation on the Boltes' appraisals. But, based on the record before the Court, the Boltes do not carry their burden to show that the Board's decision was clearly against the facts in the record and circumstances before the Board.

At the evidentiary hearing before Board, the Boltes offered a 2020 appraisal prepared "in connection with the Boltes' application for a loan." (Certified Admin. R. at 265 ¶ 44; *see also* Certified Admin. R. at 121, 332:21–22.) The Boltes also offered property record cards for several other properties that they contend are comparable to theirs. From these facts, the Boltes appear to argue that the increase in their assessment was disproportionately larger than the increases in the assessments of those purportedly similar properties. (*See* Certified Admin. R. at 268–69 ¶ 57.) The Board found that the Boltes' approach "misse[d] the mark" and concluded that the Boltes' evidence did not demonstrate the market value-in-use of their property. (Certified Admin. R. at 269 ¶ 58.)

The Boltes' challenge must fail as it is a straightforward request for this Court to reweigh the evidence. This Court may not reweigh the evidence; it "may not reverse a

15

final determination of the Indiana Board simply because it disagrees with how the Indiana Board found the facts, and it may not substitute its judgment for that of the Indiana Board." *Kildsig v. Warrick Cnty. Assessor*, 998 N.E.2d 764, 767 (Ind. Tax Ct. 2013). Even if the Board had found the Boltes' appraisal to be probative of their property's market value-in-use, it was still within the Board's discretion to assign more weight to the Assessor's appraisal and adopt those figures instead. IND. CODE § 6-1.1-15-20(f) (2025) ("In an appeal under this chapter, the Indiana board shall, as trier of fact, weigh the evidence and decide the true tax value of the property as compelled by the totality of the probative evidence before it.").

The valuation evidence before the Board was not so one-sided as to compel the Board to determine a value consistent with the Boltes' evidence. To the extent the Boltes offered the 2020 appraisal in the record as proof of the true tax value for the years in question, the Board did not abuse its discretion in not relying on it. Each appraisal year stands on its own, so evidence of the property's assessment in one year "is not probative as to its assessed value three years later." *Fleet Supply, Inc. v. State Bd. of Tax Comm'rs*, 747 N.E.2d 645, 650 (Ind. Tax Ct. 2001). That is, the 2020 appraisal of the property offered by the Boltes is not probative now to show the 2023 and 2024 true tax value without adjustment or analysis consistent with generally accepted appraisal principles. 2021 REAL PROPERTY ASSESSMENT MANUAL ("2021 Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2026)) at 2 (stating that the determination of market value-in-use "shall be applied in accordance with generally recognized appraisal principles"). The Boltes have not shown that their analysis follows these principles. The only analysis offered by the Boltes was their

calculation of how the 2024 assessed values of the comparable properties in their 2020 appraisal increased over the properties' respective 2020 sale prices. (*See* Certified Admin. R. at 341:7–342:19.) The Boltes averaged those changes together to propose that the average increase among those properties (3.08%) should be applied to their property instead of the appraiser's values. (*See* Pet'r's Br. at 26.) Such adjustment is of dubious value because the Boltes have not shown that such an approach is consistent with generally accepted appraisal principles.

Furthermore, neither the report itself nor the Boltes' briefing indicates that the Boltes' 2020 appraisal was meant to capture market value-in-use. That appraisal was prepared for a bank in connection with a loan and specifies that its intended use was for "collateral risk assessment as it relates to the value" of the property. (Certified Admin. R. at 124.) This is followed by a definition of market value, (Certified Admin. R. at 124,) which is distinct from market value-in-use, *see* 2021 Manual at 6.

Lastly, while the Boltes offered the assessments of several other purportedly similar properties, they do not explain how the differences between their property and those comparable properties affect the market value-in-use of the comparable properties, which is necessary to determine their property's market value-in-use. A party submitting evidence of comparable properties is "responsible for explaining to the Indiana Board the characteristics of their own property, how those characteristics compared to those of the purportedly comparable properties, and how any differences affected the relevant market value-in-use of the properties." *Long v. Wayne Twp. Assessor*, 821 N.E.2d 466, 471 (Ind. Tax Ct. 2005); *see also DuSablon*, 160 N.E.3d at 596 (finding no error where the petitioner "failed to explain how *the market* perceives

17

differences [between properties] as impacting value") (emphasis in original). Accordingly, it was not an abuse of discretion for the Board to assign the Boltes' adjustment and analysis of the 2020 appraisal no weight in determining market value-in-use for the Boltes' property in 2023 and 2024.

**6.  The Board did not abuse its discretion in accepting the appraisal offered by the Assessor.**

The Boltes also contend that the Board should not have accepted the Assessor's appraisal as probative evidence of the true tax value of their property. They claim that the appraiser's report and testimony were insufficient to carry the Assessor's burden of proof because they were relevant only to the "value" of their property—which they contend differs from the "assessed value" at issue. (Pet. Br. at 19–20.) The Court disagrees.[9][10]

It is the Board's role in valuation appeals like this one to determine the true tax value of the subject property. IND. CODE § 6-1.1-15-20(f). Under well-established Indiana law, the assessed value of a property is its true tax value which is measured by its market value-in-use. *See* 2021 Manual at 2; *see also* IND. CODE § 6-1.1-31-6(f). At the hearing before the Board, the appraiser testified that the purpose of his appraisal was to "estimate the market value in use" of the Boltes' property, echoing statements from his appraisal report. (Certified Admin. R. at 300:30–31; *see also* Certified Admin. R. at 217.) In its final determination, the Board found that this appraisal was probative of the market

---

[9] The Boltes also claim that the Indiana Board erred in finding that they did not rebut the appraiser's trending factor, (Pet'r's Br. at 20 ¶ 35,) but they do not develop that claim, so the Court will not address it further. *Ciceu*, 272 N.E.3d at 589 n.4.

value-in-use of the Boltes' property. (Certified Admin. R. at 268 ¶ 54.) Thus, the appraiser's report and testimony were relevant to the market value-in-use of the property, which in turn is relevant to the true tax value (and therefore the assessed value) of the Boltes' property. The Board did not err in finding the appraisal offered by the Assessor to be relevant and probative of the assessed value of the Boltes' property.

### 7. The Boltes have not demonstrated that separation of land and property values is required in a final determination.

Last, the Boltes claim that the Board erred when it did not separate the "land and property assessment [values] . . . in its Final Determination." (Pet'r's Br. at 33–34.) The Boltes assert this is required "in accordance with the IAC," (Pet'r's Br. at 35 n.11,) and "by law," (Pet'r's Reply Br. at 2; *see also* Pet'r's Reply Br. at 5–6,) so the Court understands their argument to be that the Board's lack of separation was contrary to law. This claim fails as the Boltes do not support this claim with legal authority.

Despite claiming that the Board is required to separate the land and property assessment values, the Boltes do not direct this Court to any statute, regulation, or any other law supporting this claim. Nor is this Court otherwise aware of any such law. A party must support a claim that the Board acted contrary to law with legal authority. *Abraytis v. Porter Cnty. Assessor*, 220 N.E.3d 77, 81–82 (Ind. Tax Ct. 2023). Because the Boltes do not point to any relevant authority, they do not carry their burden to show that the Board's decision was contrary to law.

### CONCLUSION

The Board's final determination in this matter is AFFIRMED.